**NOA AIRSCREW HOWDEN, INC., Plaintiff,**

v.

**DEPARTMENT OF the ARMY, John O. Marsh, Jr., Secretary of the Army and John T. Boone, Contracting Officer, U.S. Army Tank Automotive Command, Defendants.**

**No. 85 71994.**

United States District Court, E.D. Michigan, S.D.

Nov. 27, 1985.

Louis D. Victorino, Los Angeles, Cal., for plaintiff.

Ross R. Mackenzie, Asst. U.S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This action was filed by NOA Airscrew Howden, Inc. (NOA), a disappointed bidder, after the award of two contracts by the United States Army Tank Automotive Command (TACOM) to a competitor, Ronal Industries, Inc. (Ronal). Plaintiff commenced this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Armed Services Procurement Act, 10 U.S.C. § 2301 *et seq.*, and the Office of Federal Policy Procurement Act, 41 U.S.C. § 401 *et seq.*, alleging unfairness in defendants' conduct of the solicitation process which led to the award of the two contracts. Plaintiff seeks an order enjoining defendants from performance of the contract with Ronal and directing defendants to award the contracts to NOA.

The contracts at issue are for the acquisition of high speed industrial fans for use by the Department of the Army as spare parts for its principal tank, the M-1. There are three separate, but similar fans involved: tubeaxial fans, right side fans and left side fans. Plaintiff had supplied each of the three types of M-1 fans to TACOM on at least one prior occasion.

A brief overview of the process through which TACOM acquires its hardware is necessary for an understanding of the facts in this case. Computer-generated hardware requirements are prepared by an organization independent of TACOM in the form of Procurement Requests (PRONS). The PRONS are then forwarded to TACOM procurement officials for solicitation of bids from prospective suppliers. The source selection process may take one of two forms, negotiated or formal bidding, to which different federal acquisition regulations apply.

A Contracting Officer (CO) has ultimate responsibility for contract approval and for ensuring fair, effective contracting which safeguards the interests of the United States. A Contract Specialist (CS), who is supervised by the CO, evaluates bids, prepares documents, negotiates with bidders, and executes an award plan subject to CO approval.

On certain contracts the government requires a contractor to build and test one or more sample units before going into production in order to determine if the units meet contract specifications. These units are called first articles. The procedure may be waived if the contractor has previously produced the article or one of similar complexity. The costs associated with making the first articles and their testing are referred to as First Article Test Costs (FAC).

This case involves three separate bid solicitations which resulted in the award of two contracts to Ronal. Solicitation 544 was initially issued on July 20, 1984 seeking proposals for 196 tubeaxial fans. The solicitation resulted from receipt by TACOM of two PRONS, one for 86 units issued on March 20, 1984, and the other for 110 units issued on April 16, 1984.

Both NOA and Ronal responded to the solicitation. NOA included an FAC breakdown and requested an FAC waiver. The Ronal offer did not indicate whether its price included FAC or not. The quotations were:

|  | With FAC | Without FAC |
|---|---|---|
| NOA | $1,560.31 | $1,210.00 |
| Ronal | 1,249.00 | |

On August 31, 1984, solicitation 544 was amended to add forty additional units which were requested in a PRON dated April 9, 1984. The CO, defendant John Boone, sent a letter to each firm affording it an opportunity to revise its prices to conform to the increased quantity. Additionally, a breakdown of FAC was requested. Revised offers were received on September 12, 1984.

|  | With FAC | Without FAC |
|---|---|---|
| NOA | $1,489.08 | $1,198.14 |
| Ronal | 1,195.00 | |

The contract was awarded to Ronal as the low bidder on October 23, 1984.

Solicitation 526 was issued on June 29, 1984 seeking proposals for 50 right side fans. This solicitation was issued in response to a PRON dated April 2, 1984. Both NOA and Ronal bid on the contract. NOA requested and was granted waiver of FAC. The quotations were:

|  | With FAC | Without FAC |
|---|---|---|
| NOA | FAC waived | $1,074.90 |
| Ronal | $2,480.00 | N/A |

Solicitation 526 was cancelled on August 30, 1984.

Solicitation 525, requesting proposals for 27 left side fans, was initially issued on June 28, 1984 in response to a PRON dated April 9, 1984. Prior to the submission of any bids, solicitation 525 was amended to increase the quantity of left side fans by an additional 46 units which were requested in a PRON dated June 4, 1984. NOA and Ronal both submitted proposals.

|  | With FAC | Without FAC |
|---|---|---|
| NOA | FAC waived | $1,975.00 |
| Ronal | $2,590.00 | N/A |

On September 6, 1984 solicitation 525 was amended again. This amendment added the 50 right side fans from cancelled solicitation 526. Best and final offers were submitted on solicitation 525 on September 18, 1984.

|  | With FAC | Without FAC |
|---|---|---|
| NOA (right side) | FAC waived | $1,064.26 |
| Ronal (right side) | $1,049.00 | N/A |
| NOA (left side) | FAC waived | $1,955.64 |
| Ronal (left side) | $1,890.00 | N/A |

The contract for the units identified in solicitation 525 was awarded to Ronal on October 16, 1984.

Plaintiff claims that the defendants unlawfully restricted competition in the solicitation process, converted the solicitation process into an auction and disclosed confidential information regarding one bidder to a competitor.

The Administrative Procedure Act (APA) defines the parameters for judicial review of agency action as follows:

> The reviewing court shall ... hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law....

5 U.S.C. § 706(2)(A).

A district court's inquiry into whether government action is arbitrary and capricious is narrow. *Bowman Transportation v. Arkansas-Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *reh'g denied*, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433. While the court may inquire into whether the decision-makers considered "relevant factors and whether there has been a clear error of judgment ... [t]he court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). It is not the function of the court to provide a reasonable basis for an agency decision; that burden is on the agency. If, however, the agency's reasoning may be discerned, its decision should be upheld. *Bowman Transportation*, at 285–86, 95 S.Ct. at 441–42 citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947); *Colorado Interstate Gas Co. v.*

*FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945).

In the companion cases of *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289 (D.C.Cir. 1971) and *Wheelabrator Corp. v. Chafee,* 455 F.2d 1306 (D.C.Cir.1971), the United States Court of Appeals for the District of Columbia Circuit discussed the relevant factors that a court should consider before intervening in the government's contracting process. Those decisions also delineated the scope of review to be undertaken and the plaintiff's burden of proof in challenging a CO's decision. The court held that:

> [i]n the field of government procurement, the courts must be sedulous to heed the admonition that their authority to vacate and enjoin action that is illegal must be exercised with restraint less the courts fall into the error of supposing that they may revise 'action simply because they happen to think it ill-considered, or to represent the less appealing alternative solution available.'

*M. Steinthal,* at 1298–99 quoting *Calcutta East Coast of India and East Pakistan/USA Conference v. Federal Maritime Commission,* 399 F.2d 994, 997 (1968).

In reviewing a CO's decision, courts must "fully take into account the discretion that is typically accorded officials in the procurement agencies by statutes and regulations." *M. Steinthal,* at 1301. In respect to the evaluation of bids submitted in response to a solicitation, the D.C. Circuit held that:

> [i]f the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.

*Id.* A procurement decision should not be overturned unless the aggrieved bidder satisfies the "heavy burden" of demonstrating "either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973).

Plaintiff's first claim is that the defendants purposely restricted competition on the solicitations as part of a scheme to assure award of the contract to Ronal. For this proposition, plaintiff primarily relies on the fact that another possible supplier, Able, Inc. (Able), was not solicited. Although Able had never supplied fans to TACOM, it had apparently provided such products directly to the M–1 tank manufacturer in the past. Plaintiff asserts that no rational basis existed for excluding Able and that the exclusion was in violation of 48 C.F.R. § 15.105 and the Armed Services Procurement Act, 10 U.S.C. § 2304(g).

Plaintiff bolsters its argument that competition was deliberately restricted by pointing out that in 1983, Ronal requested from the TACOM CO samples of the three fans manufactured and previously supplied by NOA for the purpose of duplicating the products through "reverse engineering." TACOM accommodated the request by leasing the fans to Ronal for a period of one year.

Prior to its amendment in 1984, the Armed Services Procurement Act, 10 U.S.C. § 2304(g) provided:

> In all negotiated procurements in excess of $25,000 in which rates or prices are not fixed by law or regulation and in which time of delivery will permit, proposals, including price, shall be solicited from the maximum number of qualified sources consistent with the nature and requirements of the supplies or services to be procured. . . .

Similarly, 48 C.F.R. § 15.105 provides:

> Negotiated contracts shall be awarded on a competitive basis to the maximum practical extent. To this end: (a) Offers shall be solicited from the maximum number of qualified sources consistent with the nature of and the need for supplies or services being acquired. Acquisition in-

formation shall be publicized in accordance with 5.101.

Plaintiff's allegation that these general requirements to maximize competition require universal solicitation is without merit. At trial, defendant Boone testified that TACOM maintains automatic bidder lists of potential suppliers for different types of equipment. Inclusion on the list occurs when a supplier requests a solicitation. The list is updated periodically. Defendant Boone's testimony was corroborated by the testimony of Glenn Kriese, who did not appear at trial but upon whose deposition testimony plaintiff relies. Mr. Kriese was the CS involved in all three solicitations. Both Boone and Kriese testified that potential suppliers are selected from the list for solicitation on a random or rotating basis. Mr. Kriese testified that "fifteen or twenty respondents out of perhaps a thousand" are identified as firms to whom a solicitation should be sent.

In order to provide maximum competition, each solicitation is also published in the *Commerce Business Daily* and a synopsis of the solicitation is available through the Document Distribution Office. Interested potential suppliers who become aware of a solicitation through these or any other channels are sent the information necessary to submit a bid. In addition to these forms of access to solicitation, any suppliers identified by the CS on the planning document and all former suppliers receive the solicitation.

There is no indication that the process was not followed in relation to any of the solicitations at issue in this case. Each solicitation was published in the *Commerce Business Daily*. Never having supplied fans to TACOM before, Able was properly not included on the automatic bidders list. Although NOA and Ronal were the only bidders identified on the planning document, defendant Boone testified that roughly 15 bidders were sent each of the three solicitations. Mr. Kriese testified that he was not instructed to exclude any supplier and that it was merely his "conclu-sion" that the solicitation should not be sent to Able.

Section 15.403 of 48 C.F.R. provides that solicitation mailing lists for negotiated acquisitions shall be used in accordance with the provisions of 48 C.F.R. § 14.205. Nothing in the language of 48 C.F.R. §§ 14.205–14.205–5 even suggests that each and every known potential source must be approached on every solicitation. In fact, 48 C.F.R. § 14.205–4 provides that known sources need not be solicited every time a requirement exists in their area of interest and clearly vests in the CO "considerable judgment" in the use and management of solicitation lists. Moreover, at trial, defendant Boone testified that between May and October of 1984, he had no specific knowledge of Able as interested in supplying fans. Under these circumstances, there is no support for the proposition that these solicitations were unlawfully restricted.

■ Furthermore, plaintiff's argument concerning Ronal's request to examine the fans manufactured by NOA is irrelevant. Plaintiff's own deposition witness, Mr. Kriese, testified that such arrangements had been made in the past and were apparently not unusual. The only unusual aspect of the transaction was the structuring of a lease arrangement, but this, according to Mr. Kriese, was merely done in an attempt to legalize what was an existing practice of the agency. Thus, plaintiff's claim of restricted competition must fail.

■ Plaintiff further claims that defendants violated the applicable regulations by engaging in auction techniques. Section 15.610(d) of Title 48 of the Code of Federal Regulations provides that:

The contracting officer and other Government personnel involved shall not engage in—...

(3) Auction techniques, such as—
　i. Indicating to an offeror a cost or price that it must meet to obtain further consideration;
　ii. Advising an offeror of its price standing relative to another offeror

(however, it is permissible to inform an offeror that its cost or price is considered by the Government to be too high or unrealistic); and

iii. Otherwise furnishing information about other offeror's prices.

Plaintiff avers that the timing of the amendment to solicitation 544, the cancellation of solicitation 526, and the addition of the 526 fans to solicitation 525 are evidence of a plan to award the contract to Ronal. In support of its assertion, plaintiff points out that all of the PRONS were received at TACOM prior to the issuance of any solicitation. The parties agree that NOA had notified the defendants in advance of the solicitations at issue in this case that a better price could be achieved by consolidating PRONS for right and left side fans into one solicitation. Consequently, plaintiff argues that TACOM had time to consolidate the PRONS into the most economical solicitation configuration before soliciting any bids. The second round of bidding on each solicitation was necessary, according to plaintiff, only because the defendants deliberately manipulated the process in furtherance of the allegedly prearranged scheme.

In support of its argument, plaintiff cites 48 C.F.R. § 15.610(a)(6) which eliminates the requirement for written or oral discussion in acquisitions "[i]n which adequate competition or accurate prior cost experience with the product or service clearly demonstrates that acceptance of the most favorable initial proposal without discussion would result in a fair and reasonable price...." Plaintiff contends that TACOM's prior experience with purchasing fans from NOA and the existence of Ronal's initial bid for comparison, provided defendants with a basis for determining the reasonableness of NOA's initial bid.

Further, plaintiff notes that TACOM could have acquired the 40 units added by amendment to solicitation 544 by exercising its option under Special Provision H–4 of the original solicitation. This provision reserved to the government the right to purchase an additional quantity of up to 50% of the original contract quantity at the original contract price. Under these circumstances, plaintiff concludes that TACOM's decision to seek further bidding had no rational basis.

The court does not agree with plaintiff's contentions. Defendants in this case neither violated the applicable regulations nor lacked a rational basis for their decisions. In relation to the amendment of solicitation 544, it must first be noted that 48 C.F.R. § 15.606(a) authorizes amendment of solicitations either "before or after receipt of proposals" if "the Government changes, relaxes, increases, or otherwise modifies its requirements." Although 48 C.F.R. §§ 15.610(b)(6) and 15.215–16 authorize acceptance of an initial proposal under some circumstances, nothing in the language of these regulations requires it. The provisions are clearly permissive rather than mandatory.

Nor is it remarkable that TACOM chose not to accept NOA's initial proposal and exercise its option to purchase additional units. Again, nothing in the language of 48 C.F.R. § 17.207 governing the exercise of options is mandatory. Moreover, the purpose of an option clause in a solicitation is obviously to provide a tool by which the government may gain a financial advantage in the event that it *later* requires a larger quantity than originally anticipated. Amending the solicitation in order to obtain a price reduction as a result of acquiring a larger quantity at the outset rather than purchasing the additional units at the original contract per unit price, is clearly in the government's best interest.

At trial, defendant Boone testified that solicitation 544 was amended not only to increase the quantity, but also to clarify Ronal's bid. The bid was ambiguous because Ronal had failed to indicate whether its price included FAC or not. Mr. Kriese testified that due to his oversight, solicitation 544 as first issued, did not contain a requirement on the schedule for a proposer to separately identify FAC. Although plaintiff voluntarily entered this information, Ronal had not done so. Mr. Kriese

further testified that he too thought it would have been inappropriate to make a determination of low bidder under these circumstances. He indicated that resolution of the ambiguity was achieved by requesting best and final offers. In addition, the quantity was amended.

Mr. Kriese also testified that it was his understanding that defendant Boone recommended amending the solicitation because both prices seemed excessive. In fact, Mr. Kriese stated that he agreed with defendant Boone's analysis of the bids. Both defendant Boone and Mr. Kriese testified that amending solicitations for the purpose of adding a newly requested quantity was a common occurrence. In addition, defendant Boone testified that one PRON generally resulted in issuance of one solicitation.

Plaintiff alleges, based on Mr. Kriese's deposition, that defendant Boone was aware of the existence of the third PRON for the 40 additional tubeaxial fans prior to issuance of the original 544 solicitation and that defendant Boone specifically directed Kriese not to include them in the solicitation. At trial, Mr. Boone testified that a solicitation is generally amended upon receipt of a PRON for the same item. He was not questioned, however, regarding either the point in time at which he became aware of the third PRON or any directions he may have given to Mr. Kriese regarding it.

■ The court will not speculate as to the truth of plaintiff's allegations, which plaintiff did not see fit to explore during examination of Mr. Boone. Regardless of defendant Boone's state of mind with respect to the third PRON, ambiguity regarding FAC in Ronal's bid and the amount of both bids provided a rational basis for the amendment. Further, plaintiff has failed to point to any provision requiring the inclusion of all known equipment needs in a single solicitation. The duty of a CO is owed first to protecting the interests of the United States. 48 C.F.R. § 1.602. In fulfilling this duty, a CO must function impartially. *Id.* The impartiality requirement was met by sending the amendment to both bidders.

Contracting officers are allowed "wide latitude to exercise business judgment." *Id.* Moreover, the discretion granted to contracting officers in conducting negotiated acquisitions under 48 C.F.R. §§ 15.000–15.1004, is substantially broader than the discretion afforded when using formal advertising or sealed bidding procedures under 48 C.F.R. §§ 14.000–14.503. *Drexel Heritage Furnishings v. United States,* 71 Cl.Ct. 134, 142 (1984); *Coastal Corp. v. United States,* 6 Cl.Ct. 337, 343, (1984). Having violated no statute or regulation, and having as a rational basis for the action at least the necessity to clarify Ronal's proposal, this court cannot find that defendants' actions were arbitrary or capricious.

■ Plaintiff alleges that TACOM's decisions to amend solicitation 525 and to cancel solicitation 526 lacked rational bases as well. As primary support for its argument, plaintiff notes that prior to issuing any requests for bids, TACOM had received all of the PRONS eventually incorporated into the final version of solicitation 525 and was aware that combining PRONS for left and right side fans would be cost effective for the government. Plaintiff contends that "not having taken advantage of that information at the time of originally soliciting bids, it is irrational to subsequently utilize the information after one round of bids have (sic) been received."

The logic of plaintiff's argument escapes this court. TACOM's failure to utilize the information by consolidating the PRONS into one solicitation does not preclude it from subsequently benefiting from it. TACOM issued solicitation 525 for 27 left side fans on June 28, 1984. Prior to submission of any bids, the solicitation was amended to increase the quantity by an additional 46 identical units. The preceding discussion regarding amendment of solicitations disposes of any argument challenging the legality of this action.

One day after issuing solicitation 525, TACOM issued solicitation 526 for 50 right side fans. Both plaintiff and Ronal submitted bids, but the solicitation was cancelled because TACOM knew it could get a better price on all its requirements by combining the requests for right and left side fans into one request for proposals. Thus, solicitation 525 was amended again; this time to add the 50 right side fans from 526.

Cancellation of a solicitation is authorized regardless of the stage of the acquisition, by 48 C.F.R. § 15.606(b)(4) "[i]f a change is so substantial that it warrants complete revision." There is no indication that TACOM's actions with respect to solicitations 525 and 526 were anything but an attempt to correct administrative errors. Although TACOM could have combined all the PRONS into one solicitation, its failure to do so in the first instance is immaterial so long as both bidders were treated equally. In this case there was legitimate, rational support for each of TACOM's decisions, the competitors were treated fairly and equally and no statute or regulation was violated. Therefore, plaintiff has failed to meet its burden of establishing that defendants' decision-making was arbitrary or capricious.

■ Finally, plaintiff alleges that defendants violated 48 C.F.R. § 15.610(d) by deliberately disclosing prices. Plaintiff claims that in each instance, after initial bids were submitted, TACOM communicated to Ronal that its prices were too high for award. This claim is substantiated by Mr. Kriese's deposition testimony that defendant Boone "at least chastized Ronal for submitting bids that were too high." Both defendant Boone and Milton Fishman, Ronal's vice president, who also testified at trial, denied any communication whatsoever between Ronal and TACOM in relation to price. Their testimony, which the court had the opportunity to observe and evaluate first-hand at trial, was completely credible. Mr. Kriese did not testify at trial. Furthermore, even if TACOM had informed Ronal that its initial prices were too high, such disclosure fits squarely within the scope of communications specifically authorized by 48 C.F.R. § 15.610(d)(3)(ii) which provides that "it is permissible to inform an offeror that its cost or price is considered by the Government to be too high or unrealistic."

■ Based on a comparison of Ronal's initial bids on each solicitation to its final offers, plaintiff concludes that either NOA's prices were communicated to Ronal, or that Ronal was advised of the price it would have to quote in order to have its offer considered further. Analysis of plaintiff's comparison tables does reveal that in each instance, Ronal's price reduction in the second round of bidding approximated the amount necessary to defeat NOA. This fact alone, however, is far too speculative a basis on which to base a finding of regulatory violation.

Ronal's price reductions on the second rounds of bidding were sizeable. NOA's reductions, even with the increased quantities generated by the amendments, ranged only from $10.00 to $20.00 per unit. Moreover, logic dictates that Ronal's final prices had to have been reasonable since they were very similar to NOA's. At trial, Mr. Fishman attributed Ronal's significant price reductions between the bidding rounds to the increase in the quantity requested and to the additional time the company had to examine the drawings. Absent evidence of wrongdoing, this court cannot hold that price variation alone supports a finding of disclosure.

For the foregoing reasons, this court finds that the actions taken by TACOM in the course of its solicitation of proposals for the spare parts at issue in this case were not arbitrary or capricious and therefore, the decision of the agency to award the contracts to plaintiff's competitor must stand. Plaintiff's complaint must, therefore, be dismissed.

IT IS SO ORDERED.